

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: **MAY 2 9 2013**

*86 Chambers Street, 3rd floor*
*New York, New York 10007*

May 27, 2013

**BY HAND DELIVERY**
The Honorable Katherine B. Forrest
United States District Court
500 Pearl Street
New York, NY 10007-1312

Re:  *McKanney v. Dep't of the Navy,*
     No. 13 Civ. 1535 (KBF)

Dear Judge Forrest:

     This Office represents the defendant, Department of the Navy ("Navy"), in this matter. We write to follow up on our discussions at the April 18, 2013 initial pretrial conference, and with reference to the Court's April 19, 2013 Order at Docket No. 8 (the "Order"). In response to the Order, this letter documents the efforts the Government has made to date to attempt to locate, *inter alia,* the collection of military service documents requested by plaintiff through the Freedom of Information Act ("FOIA").

A. **Background**

     Plaintiff alleges he served in the Navy from 1978 to 1981. Compl. at 7 of 22.[1] Plaintiff describes the documents he is looking for in various ways, including: a "closed field service jacket" a "sealed/closed military record," a "part of his sealed FBI file," or a set of documents sometimes called a "missions file" or a "command file" (hereafter, the "Requested Information"). Among other things, the Requested Information is alleged to contain:

---

[1] In response to the Court's queries at the April 18, 2013 conference, a summary history of Mr. McKanney's Navy career, drawn from his personnel files, is attached hereto as Exhibit A. In brief, Mr. McKanney served in the Navy from 1979 to 1981. He was administratively separated in 1981, and was then made ineligible for reenlistment due to a "pattern of misconduct of a discreditable nature." Exh. A at 4. He has had no further affiliation with the Navy since then.

Hon. Katherine B. Forrest
May 27, 2013
Page 2

- Information necessary to prove plaintiff's military disability claim; Compl. at 3 of 22,

- Doctor's exams and diagnoses of plaintiff's neck, left shoulder and spinal injuries; *Id.* at 5 of 22,

- Information allegedly showing that plaintiff is 100% disabled, and paperwork pre-filled out for the purpose of obtaining his disability rating; *Id.,*

- Information showing that plaintiff is entitled to back pay dating back to 1981; Compl. at 6 of 22,

- Private personal papers including a trust agreement "without which [plaintiff] can't access [his] trust without legal representation," and stocks and bonds allegedly owned by plaintiff; *Id.* at 6, 8, of 22.

- Information from plaintiff's sealed FBI records which purport to show that he was one of the very first persons in the FBI's "protected witness program;" *Id.* at 9, 11 of 22,

- Information that is classified "secret," *Id.* at 8 of 22, or "top secret," *Id.* at 12 of 22, but not considered "sensitive" to the Navy, because it consists merely of personal information for "[plaintiff's] eyes only." *Id.,* at 6 of 22.

Plaintiff suggests that the Requested Information was never kept with his personnel file, "but was an attachment to it and kept separate." *Id.* at 19 of 22. He also says that the Navy located the Requested Information "about two to five years ago," but he no longer remembers "where it was kept." *Id.*

### B. **FOIA Timeline**

On January 27, 2012, plaintiff initiated his FOIA request via a letter to the Secretary of the Navy, Chief of Naval Operations, FOIA Office. Compl., Exh. 1 at 7 of 22. In this letter, plaintiff noted his Navy time-in-service as August 1978 to July 1981, and that he was attached to the U.S.S. Coral Sea, and Naval Air Station Lemoore, in California. *Id.*

On March 16, 2012, the Chief of Naval Operations responded that plaintiff's FOIA request had been received. Because plaintiff's Navy service concluded in 1981, his request was referred to the National Personnel Records Center ("NPRC") in St. Louis. *Id.,* Exh. 2 at 10 of 22.

Following this referral, on March 28, 2012, NPRC responded to plaintiff, noting its understanding that he was requesting copies of closed or sealed military records.

Hon. Katherine B. Forrest
May 27, 2013
Page 3

NPRC informed plaintiff that "[t]here are no closed/sealed military records on file at this Center." *See* Exhibit B, attached hereto.[2] NPRC also noted that, in 2008, it had already provided plaintiff with a copy of *every* personnel document in plaintiff's military file and thus, there "was nothing else on file" to send plaintiff. *Id.*

On April 2, 2012, plaintiff appealed. He apparently drafted at least four copies of his FOIA appeal, all of which he labeled as "Exhibit 3" to the complaint. The first Exhibit 3 is a letter containing no addressee information. The second Exhibit 3 is a letter, similar to the first Exhibit 3, directed to the Navy Office of the Judge Advocate General (or "OJAG"). The third Exhibit 3 is a similar letter that plaintiff sent to the Secretary of the Navy, Chief of Naval Operations, two days later, on April 4, 2012. Compl. at 16 of 22. The fourth Exhibit 3 is a letter dated April 6, 2012, sent to an unspecified address. In all four letters, plaintiff again seeks the Requested Information, without reference to the fact that he already obtained his complete personnel file from NPRC in 2008, or that NPRC informed him that there are no remaining files to produce. The fourth letter is also notable for plaintiff's allegation that the Navy located the Requested Information for plaintiff "two to five years ago," but plaintiff is "sorry" he can no longer remember where the information was kept. *Id.* at 19 of 22.

On May 1, 2012, the Navy Office of the Judge Advocate General responded to plaintiff's FOIA appeal. The OJAG confirmed, among other things, the adequacy of the Navy's search procedures. Compl., Exh. 4, at 20 of 22. OJAG also noted that it had no authority to further adjudicate NPRC's "no records" determination, because NPRC is a component of the National Archives, not the Department of the Navy. *Id.* at 21.

On June 26, 2012, the Office of the Secretary of the Navy ("SECNAV") wrote plaintiff in reference to a telephone call he placed on June 11, 2012, regarding the Requested Information. SECNAV reported its understanding that OJAG had already given plaintiff a final determination of "no records." SECNAV followed this with a "no records" determination of its own, and formally closed its file on plaintiff's FOIA request. Compl. at 22 of 22.

On July 10, 2012, plaintiff apparently faxed correspondence to the OJAG seeking "additional review" of his previous appeal denial. A copy of this faxed letter was not attached to the complaint and has not been located by the Navy. OJAG's response, dated August 22, 2012, noted that a final determination had already been made on plaintiff's FOIA request and appeal, and the finding of "no records" was re-confirmed. (A copy of that letter is attached hereto as Exhibit C). Furthermore, in an effort to assist plaintiff, OJAG took the additional step of contacting the Modern Military Records Branch ("MMRB") in Adephi, Maryland. *Id.* Through that contact, OJAG learned that plaintiff

---

[2] Exhibit B was not included as part of the correspondence plaintiff appended to his complaint.

Hon. Katherine B. Forrest
May 27, 2013
Page 4

had already sent an independent FOIA request to MMRB, and that MMRB was going to respond separately to plaintiff regarding that request. *Id.*

Thereafter, unsatisfied with the Navy's "no records" determination, on March 7, 2013, plaintiff filed this FOIA action against the Navy.

### C. **Confirming Adequacy of Search**

Following the April 18, 2013 initial pre-trial conference, counsel for the Government attempted to re-verify the Navy's determinations of "adequate search" and "no records" by reviewing with OJAG counsel all of the steps the Navy took to search for the Requested Information. Counsel for the Government and the Navy OJAG then attempted to brainstorm concerning additional locations where the Requested Information might be located.

No responsive documents were located, nor are they believed to exist. In making this assessment, the Government was mindful of the Court's admonition not to be overly formulaic or unduly literal with respect to the labels plaintiff used to describe the Requested Information. Indeed, the Navy cast the broadest possible net, searching for anything and everything that could possibly resemble the information plaintiff described as contained in his "closed military field jacket" file.[3]

Among other things, the Navy confirmed the following steps with respect to adequacy of search:

- The office of the Secretary of the Navy searched for documents, and confirmed its finding of no records. *See* Exhibit C.

- OJAG conducted an expansive sweep of the Navy's components by contacting DNS-36, which is the branch tasked with pulling records Navy-wide for any FOIA request. *See* Compl. at 20 of 22. DNS-36 confirmed its finding of no records. *Id.*

- After contacting several components within the Department of the Navy, DNS-36 determined that the most likely place to locate the Requested Information was the NPRC. OJAG therefore made a referral to NPRC. *Id.* at 21 of 22.

---

[3] *See, e.g., Hemenway v. Hughes,* 601 F. Supp. 1002, 1005 (D.D.C. 1985) ("the agency must be careful not to read the request so strictly that the requester is denied information the agency well knows exists in its files, albeit in a different form from that anticipated by the requester").

Hon. Katherine B. Forrest
May 27, 2013
Page 5

- OJAG believed that NPRC was the most likely repository for plaintiff's Navy service records because plaintiff left military service decades ago, and military files for personnel who separated from the Navy prior to 1995 are sent to NPRC. NPRC confirmed, however, that it had produced all of plaintiff's personnel records in response to an earlier FOIA request, in 2008. *See* Exhibit B. Moreover, NPRC confirmed that there are no closed/sealed military records at NPRC, and NPRC does not hold a closed/sealed military record for plaintiff. *Id.*

- As a courtesy, SECNAV also referred this matter to the MMRB in Adelphi, Maryland, whereupon SECNAV learned that plaintiff had already sent a FOIA request for those records to MMRB, and MMRB intended to respond separately. *Id.*

On April 15, 2013, plaintiff sent a fax to Government counsel suggesting that the following control number: "DIS ENTNAC CONTROL NUMBER 773250247 Dated '77/12/12'" might be useful to locate the Requested Information. *See* Exhibit D, attached hereto. But OJAG verified that this control number refers to plaintiff's initial security investigation when he enlisted with the Navy—his ENTrance National Agency Check. OJAG therefore confirmed that this does not refer to the information plaintiff seeks.

In addition, following the Court's April 18, 2013 conference, OJAG took additional steps to locate the requested information, including re-reviewing the entire Navy system of records notices ("SORNs"). The Navy maintains 168 systems of records from which personal information about an individual is retrievable by the name of the individual.[4] Navy OJAG reviewed all 168 SORNs. The system of records plaintiff claims to be accessing—"closed military field jackets"—does not exist. In fact, only one SORN appears to be responsive to plaintiff's request:

**N01070-3, Navy Military Personnel Records System,**

which contains records for "All Navy military personnel officers, enlisted, active, inactive, reserve, fleet reserve, retired, midshipmen, officer candidates, and Naval Reserve Officer Training Corps personnel." That system further contains:

> "Full name, Social Security Number (SSN), enlisted service number, or officer file number, personnel service jackets and service records, correspondence and records concerning classification, assignment, distribution, promotion, advancement, performance, recruiting, retention, reenlistment, separation, training, education,

---

[4] The full list of Navy SORNs is published annually, as required by law, and is available at http://dpclo.defense.gov/privacy/SORNs/component/navy/index.html.

> morale, personal affairs, benefits, entitlements, discipline
> and administration of naval personnel."

The Government believes that plaintiff's request lands squarely in the middle of this system. Under this SORN, members that were retired, discharged, or died while in service prior to 1995 are directed to seek their files from the NPRC. As mentioned, Mr. McKanney was discharged prior to 1995, and his request was therefore correctly forwarded to NPRC. NPRC provided plaintiff's entire personnel file in 2008, and determined that it has no additional records responsive to the present request.

Lastly, at the April 18, 2013, status conference Your Honor asked Mr. McKanney to provide the Government with additional information regarding the circumstances by which he came to view the Requested Information two to five years ago. Mr. McKanney responded with two letters, dated April 29, 2013, and May 2, 2013, respectively, attached hereto as Exhibit E and Exhibit F.[5]

Unfortunately, these letters did not provide additional information useful for locating the Requested Information, because they do not indicate any other place where the Navy should look to locate the information. In response to these letters, however, the Navy OJAG reviewed the Department of Defense's ("DoD") SORNs as well—even though the Department of the Navy is the record custodian for any person who served in the Navy after 1995, and NPRC is the record custodian for anyone who served in the Navy prior to 1995.[6] OJAG's review of the DoD SORNs verified that the only reasonable places to look for responsive records are the systems the Navy already searched within the Department of the Navy.

Following the court conference, the Navy also requested, and received, Mr. McKanney's complete personnel file from NPRC (summarized at Exhibit A). There are no documents in this file responsive to plaintiff's FOIA request. The Government did not reproduce the personnel file here because it is fairly large, it is not the subject of

---

[5] The Government redacted Exhibit F to protect personally identifiable information.

[6] The Navy took these steps even though it is not required to query other agencies in the federal government. See Kissinger v. Reporters Comm. For Freedom of the Press, 445 U.S. 136, 151 (1980) ("control" over requested materials is a "prerequisite to triggering any duties under the FOIA"); Robert v. Nat'l Archives, 1 Fed. App'x. 85, 2001 WL 38277 (2d Cir. 2001) (affirming district court's dismissal for lack of subject matter jurisdiction where agency made available all documents in its control); United States Dep't of Justice v. Tax Analysts, 492 U.S. 136, 149-50 (1989) (documents are subject to disclosure only if "the agency [is] in control of the requested materials at the time the FOIA request is made"); Bonaparte v. DOJ, No. 07-0749, 2008 WL 2569379, at *1 (D.D.C. June 27, 2008) (finding search adequate where it was revealed that the requested records had been transferred to a component of the National Archives ("NARA"), because the requester could then seek these records from NARA).

Hon. Katherine B. Forrest
May 27, 2013
Page 7

plaintiff's current FOIA request,[7] and presumably plaintiff already has a copy due to his 2008 NPRC request. Nevertheless, the Navy will promptly reproduce a complete copy of the personnel file it obtained from NPRC if asked to do so by plaintiff or the Court.

The Government has now reached a dead end. There are simply no other Navy systems of records left that would be reasonable to search.

### D.  Government's Motion for Failure to State a Claim and/or for Summary Judgment

As the Government indicated at the initial pre-trial conference, it also uncovered discrepancies regarding the background facts in plaintiff's complaint. The Navy originally examined this information with the assumption that it might shed light on how plaintiff's "closed sealed military field jacket" file came to exist, and therefore, where to search for it. The Navy discovered that there is no record of a Senator Jonathan Walthrope, purportedly one of the "wealthiest businessmen in this country" and alleged Chairman of the "U.S. Senate Ways and Means Committee"—an entity that does not exist. *See* Compl. at 11 of 22.[8]

Nor could the Navy locate information concerning alleged attempts on the Senator's life, or kidnap attempts against his daughter-in-law and granddaughter. Compl. at 11 of 22. Indeed, in his recent correspondence, plaintiff claims that Arabian and Egyptian kings adopted him and officially made him a Prince in unnamed middle eastern countries. Exhibit E, at 2. He states that "several heads of state summarily awarded me titles, status and ultimately meritorious positions in quite a few countries." *Id.* at 2-3. He further alleges that England conferred upon him a Baronetcy, which made him a member of the House of Lords. *Id.*[9] Yet, other than the basic biographical details regarding

---

[7] *See Williams v. Ashcroft,* 30 Fed. App'x. 5, 6 (D.C. Cir. 2002) (agency need not look for records not sought in initial FOIA request); *Sheridan v. Dep't of the Navy,* 9 Fed. App'x. 55, 56 (2d Cir. 2001) (agency is not obligated to look beyond the four corners of the FOIA request for leads to the location of responsive documents).

[8] Plaintiff alleges "[t]he case in which I was involved pertains to the criminal intents and attempts to assassinate the Chairman of the U.S. Senate Ways and Means Committee, and members of his family in 1962 or 1963." Compl. at 11 of 22. But plaintiff was born in 1959, which would mean that he was only 4 or 5 years old when this event allegedly occurred.

[9] Only tax paying residents of the United Kingdom, with British, Irish or Commonwealth citizenship; bishops of the Church of England; or hereditary life members may be appointed to the House of Lords, *see* http://www.parliament.uk/business/lords/whos-in-the-house-of-lords/members-and-their-roles/diverse-experience/, and Mr. McKanney is not on the rolls of listed Lords, *see* http://www.parliament.uk/mps-lords-and-offices/lords/#nav-Monly. Indeed, Mr. McKanney provided the government with a copy

Hon. Katherine B. Forrest
May 27, 2013
Page 8

plaintiff's status as a former Navy veteran, the Government has been unable to independently verify any of the facts in the complaint or in his attached FOIA correspondence.

Furthermore, there is no basis for plaintiff's suggestion that personal trust documents, stocks and bonds, personal household papers (*see* Exhibit E, at 1), federal savings bonds or other monetary items (*Id.*), or information concerning plaintiff's status as "the very first American Investor in O.P.E.C. Oil," would be contained in closed military files. Compl. at 12 of 22. Personal documents are simply not kept in official Navy files.[10]

Consistent with its obligations under the FOIA, if the Requested Information existed and could be located, the Government would have produced it promptly, subject to any withholding under applicable FOIA exemptions.[11] This would have resolved this case quickly and easily. Unfortunately, after a thorough investigation, it is clear that no documents of the type plaintiff requests exist with regard to *any* Navy service personnel, anywhere. Regrettably, if plaintiff cannot accept this explanation, the Government will be forced to move to dismiss plaintiff's complaint for failure to state a claim, or move for summary judgment on the Navy's "no records" and "adequate search" determination.

The Government is prepared to discuss these issues further with the Court; or, in the alternative will proceed directly to the briefing schedule, should the Court so direct. We respectfully request that this letter be docketed, and thank the Court for its consideration of this matter.

---

of his United States passport reflecting his nationality as American, and his place of birth in Alabama. *See* Exhibit E.

[10] Moreover, these materials would not be within the "control" of the Navy, and therefore not subject to the FOIA: Personal papers are not agency records obtained in connection with the transaction of "official business." *See Kissinger,* 445 U.S. at 157 (the term "agency records" is not so broad as to include personal materials in an employee's possession, even though the materials may be physically located at the agency); *Folstad v. Board of Governors of Federal Reserve System,* 234 F.3d 1268 (6th Cir. 2000) (agency not obligated to seek the delivery of documents held by a third party private banking institution).

[11] To be clear, no documents have been withheld under the FOIA. For example, Plaintiff claims that his files are classified at the "secret" or "top secret" level. *See, e.g.,* Compl. at 12 of 22. But the Government has not withheld anything on classified grounds. If it had, plaintiff would, at a minimum, be entitled to a notice of withholding of classified documents, or a *Glomar* denial that the Navy "could not confirm or deny" the existence of the Requested Information. That is not the case here—the Requested Information simply does not exist.

Hon. Katherine B. Forrest
May 27, 2013
Page 9

Respectfully,

PREET BHARARA
United States Attorney

By: _____

LOUIS A. PELLEGRINO
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.    (212) 637-2689
Fax    (212) 637-2686

cc: Mr. Silvester McKanney, *via email and U.S. Mail*

Ordered

Proceed to the briefing schedule
as established by prior Court
order.

Kn B. Forr    5/28/13
USDJ

# Exhibit A

Exhibit A:  OJAG Summary of U.S. Navy Service Record for Silvester McKanney

Silvester McKanney reported for Navy recruit training on August 8, 1978.  He successfully completed recruit training on October 6, 1978.  He graduated as an Airman Recruit (E-1).

On October 21, 1978, McKanney began "'A' School"—specialized training to become an Aviation Ordnanceman.  Aviation Ordnancemen operate and handle aviation ordnance equipment; they are responsible for the maintenance of guns, bombs, torpedoes, rockets, and missiles.[1]  On February 6, 1979, he completed his training, and was designated as an "Aviation Ordnanceman, Airman Recruit."[2]

On February 18, 1979, McKanney reported to Attack Squadron 122 at Naval Air Station Lemoore, CA ("NAS Lemoore").  While stationed there, he was promoted to "Aviation Ordnanceman, Airman Apprentice."  On April 27, 1979, McKanney transferred to Attack Squadron 97, also at NAS Lemoore.

On July 18, 1979, McKanney was awarded Non-Judicial Punishment (NJP)[3] for a violation of Uniform Code of Military Justice ("UCMJ") Article 128 (Assault) and Article 89

---

[1]  http://www.public.navy.mil/bupers-npc/reference/nec/NECOSVol1/Documents/AO_occs_CH-49,%20Jan12.pdf.

[2]  A note on Naval nomenclature:  Naval enlisted personnel are not referred to by the term "rank;" they are referred to by a combination of "rate" and "rating."

   "Rate" refers to the pay grade of the individual.  Beginning as an Airman Recruit (AR, pay grade E-1),  someone in McKanney's specialty would eventually progress to an Airman Apprentice (AA, pay grade E-2),  then Airman (AN, pay grade E-3),  and onward.

   The second part of their title is the "rating," which refers to the member's occupational specialty.  In McKanney's case, "AO" would be added to his title after completion of training, indicating he was an Aviation Ordananceman.  Combining the two, McKanney would have initially been addressed as "Airman Recruit."  After his specialized training was completed, he would be an "Aviation Ordnanceman, Airman Recruit;" and upon his first promotion, he would be addressed as "Aviation Ordnanceman, Airman Apprentice."

[3]  Nonjudicial punishment (NJP) is a leadership tool providing military commanders a prompt and essential means of maintaining good order and discipline.  NJP is permitted by Article 15 of the UCMJ (10 U.S.C. § 815).  Prior to imposition of NJP, a service member must first be notified by the commander of the nature of the misconduct of which he or she is accused, of the evidence supporting the accusation, and of the commander's intent to impose NJP.  The commander will then hold a hearing at which the member may be present. The member may also have a spokesperson attend the hearing, may present evidence to the commander, and may request that the commander hear from certain witnesses.  The commander must consider any information offered during the hearing, and must be personally convinced that the member actually committed misconduct before imposing punishment.  If the member considers the punishment to be unjust or to be disproportionate to the misconduct committed, he or she may appeal to higher

(Disrespect towards a Superior Commissioned Officer).  He was reduced in rank to "Aviation Ordnanceman, Airman Recruit," and restricted to NAS Lemoore for 30 days.

On September 11, 1979 McKanney was awarded NJP for violation of UCMJ Article 86 (Unauthorized Absence) and violation of Article 113 (Misbehavior of a Sentinel).  His punishment was restriction to the base and the ship he was assigned to for 60 days.

On December 2, 1979, McKanney was reinstated to "Aviation Ordnanceman, Airman Apprentice."  On June 16, 1980, McKanney further advanced to "Aviation Ordnanceman, Airman."

On July 23, 1980, McKanney was awarded NJP for violation of UCMJ Article 86 (Unauthorized Absence).  His punishment was forfeiture of half-month's pay for one months, 15 days of extra duty, and restriction to NAS Lemoore for 15 days.

On November 6, 1980, McKanney was awarded NJP for violation of UCMJ Article 86 (Unauthorized Absence).  He was ordered to forfeit $25.00.

On January 30, 1981, McKanney was awarded NJP for seven specifications of violation of UCMJ Article 86 (Unauthorized Absence) and one specification of violation of Article 113 (Misbehavior of a Sentinel).  He was ordered restricted to the limits of NAS Lemoore for 30 days.

On February 11, 1981, McKanney was awarded NJP for two specifications of violation of UCMJ Article 86 (Unauthorized Absence).  He was ordered into the Correctional Custody Unit of the ship he was assigned to for 30 days, forfeiture of $100.00, and reduction in rate (reduction suspended for four months).

On April 7, 1981, McKanney was awarded NJP for three specifications of violation of UCMJ Article 86 (Unauthorized Absence) and one specification of violating UCMJ Article 91 (Disrespect to a Superior Petty Officer).  He was restricted to the confines of NAS Lemoore for 30 days, given 45 days extra duty, forfeiture of $250.00, and the previously suspended reduction in rate was revoked, again demoting him to "Aviation Ordnanceman, Airman Apprentice."

On April 22, 1981, an Administrative Board met to consider discharging McKanney. The board found McKanney had frequent involvement with military authority of a discreditable nature which resulted in NJP, that he had additional frequent involvement with military authority of a discreditable nature which did not result in NJP, that McKanney was "either unwilling or unable to comply with standards of military conduct," and that it was unlikely McKanney would "be able to adapt to military regimen in the future."  Based upon those findings, the board unanimously recommended the McKaney "be released from Naval Service with a general discharge."

---

authority. Receipt of NJP does not constitute a criminal conviction.  *See* http://www.navy.mil/navydata/nav_legacy.asp?id=176

On July 23, 1981, McKanney was discharged from the Navy. His characterization of service was listed as "Under Honorable Conditions (General)."[4] The reason for separation was listed as, "Misconduct – frequent involvement of a discreditable nature with military authorities." His separation code was "GKA," or, "Pattern of misconduct of a discreditable nature with civil or military authorities."[5] McKanney's reenlistment code was "RE-4." Individuals with a reenlistment code of 4 are ineligible for reenlistment.[6]

---

[4] Administrative Separations may be characterized as "Honorable," "Under Honorable Conditions (General)," or "Other Than Honorable." A general discharge is appropriate where "the quality of the member's service has been honest and faithful; however, significant negative aspects of the member's conduct or performance of duty outweighed positive aspects of the member's service record." MILPERSMAN 1910-304

[5] BUPERSINST 1900.8C.

[6] BUPERSINST 1900.8C.

# Exhibit B

04/04/2012 16:32 FAX  718 741 4685        SPINAL CORD                        ☑0008/0012

 **_National Personnel Records Center_**

Military Personnel Records, *9700 Page Avenue St. Louis, Missouri 63132-5100*

March 28, 2012

SILVESTER MCKANNEY
2266 ANDREWS AVE APT 1D
BRONX, NY 10468

**RE:**      **Veteran's Name:  MCKANNEY, Sylvester**
             **SSN/SN:  ******058**
             **Request Number:  1-4303406501**

Dear Mr. McKanney:

This is in response to your FOIA request of January 27, 2012, which was referred to this Center
March 16, 2012, by the Department of the Navy and received March 22, 2012.   You are
requesting copies of closed/sealed military records.

There are no closed/sealed military records on file at this Center. In 2008 we provided you a
copy of every personnel document in your military file and informed you that there was nothing
else on file in your OMPF to send to you.

We do not hold any closed/sealed file for you.

Sincerely,


ROBERT ROOTZ
Manager, Reference Core One
                                        *Signed*
                                        *Silvester Mc Kanney*
                                        4/4/12

# Exhibit C



**DEPARTMENT OF THE NAVY**
OFFICE OF THE JUDGE ADVOCATE GENERAL
1322 PATTERSON AVENUE SE SUITE 3000
WASHINGTON NAVY YARD DC 20374-5066

IN REPLY REFER TO:
5720
2012A080182
Ser 14/395
August 22, 2012

Mr. Silvester McKanney
2266 Andrews Avenue, Apt 1-D
Bronx, NY  10468

Dear Mr. McKanney:

SUBJECT:   YOUR CORRESPONDENCE REQUESTING RECONSIDERATION OF
           FREEDOM OF INFORMATION ACT (FOIA) APPEAL

     This responds to your correspondence which was faxed to our
office and dated July 10, 2012.  Your correspondence seeks
additional review of a previous appeal you submitted to this
office challenging the Chief of Naval Operations' (DNS-36)
search for records related to your "field service jacket" and
the declassification of those records.  I denied your appeal was
on May 1, 2012.  Your letter of July 10, 2012, is a request for
reconsideration regarding my denial of your of April 2, 2012,
FOIA appeal.

     This office has previously made a final determination
regarding this subject.  In our May 1, 2012, correspondence, we
denied your appeal which challenged the adequacy of DNS-36's
search for the records responsive to your request.  In my
letter, I explained that although DNS-36 conducted an adequate
search and contacted several agencies in an effort to locate
responsive records, no documents were located.

     Please note that there is no procedure under the Freedom of
Information Act for the reconsideration of appeals.  My decision
of May 1, 2012 is final.  As I stated before, your recourse is
to seek judicial review.

     In an effort to assist you, a member of my staff contacted
the Modern Military Records Branch in Adelphi, Maryland to
determine if they maintained records responsive to your request.
They indicated that they had received a FOIA request from you
requesting the same records.  They will respond directly to you.

5720
2012A080182
Ser 14/395
August 22, 2012

Please do not hesitate to contact this office if you have additional questions or concerns.  My point of contact is Lieutenant Commander Brett Cook, USN, who may be reached at brett.cook@navy.mil or 202-685-5396.

Sincerely,

J. D. VALENTINE
Director
General Litigation Division
Acting

Copy to:
DNS-36

Enclosure (1): OJAG Code 14 ltr 5720, F12101, Ser/256 dated May 1, 2012

2

# Exhibit D

| **VA** Veterans Administration | **VHA FAX TRANSMITTAL** |

This transmission is intended only for the use of the person or office to whom it is addressed and may contain information that is privileged, confidential, or protected by law.

All others are hereby notified that receipt of this message does not waive any applicable privilege or exemption from disclosure and that any dissemination, distribution, or copying of this communication is prohibited.

If you have received this communication in error, please notify us immediately at the telephone number shown below. Thank you.



**JAMES J. PETERS VA MEDICAL CENTER
BRONX, NEW YORK 10468**

| TO | FAX NUMBER | ☐ FTS | COMMERCIAL | DATE | NO. PAGES ATTACHED |
|---|---|---|---|---|---|
| Mr. Louis Pelagrino | 1 (212) 637- 2686 | | | 4/15/13 | |
| **SUBJECT** Military field service jacket description and Reg + Rules edition to retrieve it. | | | | | |
| **FROM** Mr. Silvester McKenney | TELEPHONE NUMBER (347) 963- 4319 | ☐ FTS | COMMERCIAL | | |

Automated VA Form 10-0114R

Silvester Mc Kanney
U.S. Navy
Unit: VA-97  NAS Lemoore, CA
SS #: ███████
Date of Service; From: 8/78 To: 7/81
2266 – Andrews Ave. Apt. 1-d
Bronx, NY 10468
December 6, 2012
Phone: # (███████
   Cell: # (███████

Dear Sir:

   I am trying again to locate my closed or sealed military field service jacket, and this time to have it declassified and its' content sent to me.   It was initiated by my then CO (Commander D. L. Carol) of VA-97 in late 1980 or around July of 1981.  Due to the fact that I was one of the very first people to be in what is now called the protected witness program I have a sealed FBI file.  Part of my sealed FBI File was needed to be more easily accessible to me, and my Commanding Officer helped me start this closed or sealed military field service jacket.  We then was given permission to copy highly sensitive documents from the FBI File to this military sealed file.  The case in which I was involved pertains to the criminal intents and attempts to assassinate the Chairman of the U.S. Senate Ways and Means Committee, Senator Jonathon Walthrope, and members of his family in 1962 or 1963 he was also one of the wealthiest businessmen in this country.

   I think the sealed military field service Jacket is classified as top secret or secret and was to be kept for me 70 years.  I think that it might also be referred to as a mission file or a command file.  It was never kept with my personnel file, but was an attachment to it and kept separate.  It was located by the DON about two to five years ago, and I am sorry I don't remember where it was kept. This file is not closed congressionally, but has always been designed for me to have ready access to it by going to any VA Regional Office and requesting it with the proper form.  Which became a big problem because I can't find anyone within the VA System who knows which form to use to request this type of file.

I have found a Certificate of Personnel Security Clearance form in my military file that applied a control number to my sealed FBI File and I was wondering if this control number might be able to be used to track or to reference my sealed military field service jacket. The control DIS ENTNAC CONTROL NUMBER 773250247 Dated 77/12/12. The information from the FBI file was placed in my military field service jacket and be somewhat linked together by this number. All my medical exam determinations was placed in this file for security as well as to fulfill the military criteria of sealed military files must contain military linked files.

(1)**********This file contains all the doctors' exams and diagnoses, all of the diagnoses are regrettablely the same. They all confirm the fact that I am 100% disabled: and they are both from military hospitals as well VA Hospitals. At least three military exams including the very first one on board ship the same day as the accident, states that I was diagnosed 100% disable.
(2)**********The file, (closed military field service jacket), also contains all of the necessary paperwork to start my military disability compensation already filled out and signed. All the forms filled out and signed except the very last one which authorizes the VA to start sending out the checks is not signed but is filled out.
(3)**********This file is vitally important to prove, not only my disability rating, but also it also shows that I am entitled to back pay all the way back to 1981. Please help me to ascertain this file so that these proofs can be brought to the light as well.

[ File description
This type file was first initialized during WW I and officially made a part of the Military Code of Rules /Regs. About WW II and was used constantly during the Korean Conflict and is now basically used for special service operatives, and military secret service members. They are described in full detail in The Military Code of Rules and Regulations: the edition that was issued about the start of WW II.  And in several editions up to about two editions before the used in 1982 in which it was only briefly mentioned. ]

Could you have someone research the Regs. and find how to retrieve it for me, although I think this office came up with the solution of a FOIA suit the last time your office helped me locate it. I had hope to avoid such an action but if it is not the only option and you can help please do.

None of the information in it is considered sensitive to The Department of Defense or The Department of the Navy in any way. And as far as the Federal Government is concerned all information in it is either my closed FBI File or my sealed military field service jacket is for my eyes only. So please don't allow the nature of how the information is retained to cloud the issue.

SIGNED:

*Ms. Silvester Mc Kanney*

MR. Silvester McKanney

Please locate and retrieve this file for me. It should be held by the Department of Defence in care of the Navy. Please track it and if I can't declassify it I need to get a copy of the military info. and all my personnal papers minus the FBI file official papers.

# Exhibit E

| **VA** Veterans Administration | | **VHA FAX TRANSMITTAL** |
|---|---|---|

This transmission is intended only for the use of the person or office to whom it is addressed and may contain information that is privileged, confidential, or protected by law.

All others are hereby notified that receipt of this message does not waive any applicable privilege or exemption from disclosure and that any dissemination, distribution, or copying of this communication is prohibited.

If you have received this communication in error, please notify us immediately at the telephone number shown below. Thank you.



## JAMES J. PETERS VA MEDICAL CENTER
## BRONX, NEW YORK 10468

| TO | FAX NUMBER | ☐ FTS | ☐ COMMERCIAL | DATE | NO. PAGES ATTACHED |
|---|---|---|---|---|---|
| Mr. Louis Pelagino | (212) 637 - 2686 | | | 4/29/13 | 5 |

| SUBJECT |
|---|
| Judge request me to send you a letter |

| FROM | TELEPHONE NUMBER | ☐ FTS | ☐ COMMERCIAL |
|---|---|---|---|
| Mr. Silvester McKanney | (347) 963-4319 | | |

Automated VA Form 10-0114R

Mr. Silvester McKanney
Unit: VA – 97 NAS Lemoore, CA
SSI # ███████████
Date of Birth:  10/21/59
U.S. Navy date of service; From 8/78 to 7/81
Unit and Ship:  Squadron VA – 97
Attached to the USS Coral Sea ( CV 43 )
Address: 2266 – Andrews Ave. Apt. 1-d
Bronx, NY 10468
Date:  April 29, 2013
Phone: # ██████████████
Cell: # ████████████

Kind Sir:

I, Silvester McKanney, declare under the penalty of perjury under the laws of the
United States of America that all of the foregoing statements are true and correct,
and that I am the person named here in.  And I understand that any falsification
of this statement is punishable by law.  <u>I am asking the Department of Defense via
the Department of the Navy to retrieve and declassify my closed or sealed
military field service jacket and send its' contents to me by means of Fed Ex one
day registered mail or the most secure fastest method you have available.  If just
only a redacted copy can be released unto me, I implore you to without doubt
please include all information of my personal papers { namely: (1). the copy of my
trust agreement, (2). the federal savings bond or any other monetary items,
(3).personal household papers, (4).all medical examination reports as well as their
determinations, and (5).the entire set of my already approved 100% disability
claim paperwork }.</u>  I will gladly pay for the shipping fees

I do not presume to tell you how to do your job, but on the contrary beseech you to use your
vast knowledge and the virtually unlimited resources of your position and office to pursue and
ascertain the where a bouts of my sealed and or closed military field service jacket.  This file is
also sometimes called a missions' file or a command file. (1).  *Although if you could find
someone that is an ex-special service member that served in black opps. working in the
Department of Defense this would most likely give you some pertinent leads.  This person would
have to be thoroughly familiar with the inner working of their filing and storage procedures, for
mission's files or closed/sealed military field service jackets.*

(2). *It was initiated by my then CO (Commander D. L. Carol) of VA-97 in late 1980 or around July of 1981.  I tried to locate him myself with only the limited resources I could manage to pay for online; several different veteran locators sites, but to no avail.  With your resources you could easily locate him and he could explain what the file is and how retrieve it through the regular steps.*  This information give the DON a reference point by which to track where in Washington, DC the file would been sent for safe keeping.  (3).  The fact that the VA located my closed military file in (Washington, DC), even though the VA did not know how to retrieve it or got to review it proves it exists and my medical records are there in.  *I would consider the VA Regional Office of NY, NY another viable source that could shed some light on the closed military field service jackets' location*.  This file is an attachment to my personnel record and is not congressionally closed.  But it is designed so that only the Vet could gain access to it through a VA Regional Office.  Could you please use the leverage of your office to help me get it?


Such files can be classified from confidential, secret, to top secret and are not necessarily sealed congressionally.  My file is classified as top secret and is not congressionally sealed, but is held separately as an attachment of my personal file.  Keep in mind the Federal Government is basically one entity and is only departmentalized.  The legal side of the DOD would have as high of a set of standards for its' extreme privacy issues as its' civilian counter parts ( the FBI or CIA ).  And this file is basically a shared responsibility for them to keep a part of this information secret.  Go to the highest levels of ultra privacy and of sensitive information management within the Department of Defense for there I am sure you will most likely find my file.

During my international travels with Senator Walthrope we met with many heads of states, and as a businessman he introduced me to investing in not only this country's stocks but also in foreign markets as well.  We were the very first American investors in O.P.E.C. Oil as well as other major stocks in the Middle East.  For this reason my where a bouts and identity was considered to be vitally important to these foreign nations, because international laws as well as national laws applied to these investments.  Some of the foreign countries went to great lengths to make sure that I could be easily reached or contacted if needed, and this is enclosed as part of my closed FBI file.  Because of the need to maintain peace in the Middle East, which at that time was fragile, this was considered most important.  The Arabian and Egyptian Kings of that time officially adopted me to give the proper grounds for the legality of me owning property in their countries, because some of the other first investors sold their stock to me. This gesture for all particle purposes officially made me a Prince of these countries.  The Egyptians became the official banker country of the early oil cartel to provide a neutral place for these uneasy new partners to meet and do business.  Some of these personal papers from my sealed FBI File were also copied into my sealed or closed military field service jacket, for easy access for me.

As you may have noticed already my early childhood was filled with many opportunities and yet greater responsibilities.  While touring the world with my manager Senator Jonathon Walthrope I was introduced too, thusly eventually becoming thoroughly acquainted with nearly all the heads of state thereof.  Therefore in due time several heads of state summarily awarded

me titles, status, and ultimately meritorious positions in quite a few countries.  Because of the need for oil in the Western Block Nations, and the tensions that then existed in the Middle East I was aptly in an approved manner appointed as a goodwill ambassador.  England was the first to see my potential ergo in subsection bestowed upon me several titles ranging from the least to Barron.  The concept behind becoming a Barron imparted upon me the ability to use one of the worlds' largest and most secure banking systems, { Lords of London } by making me a Lord.  This allowed better management of foreign holdings, and another security measure that helped concealed my identity.  Consequently there are several factors to be considered while endeavoring to procure any sealed or closed file concerning me.

My closed/sealed military field service jacket is classified as top secret or secret and was to be kept for me 70 years.  *I think that it might also be referred to as a mission file or a command file.*  It was never kept with my personnel file, but was labeled an attachment to it and kept separate.  The way it was explained to me was basically there are several types of privacy oriented military files in existence, and all of them have different periods of time that they would be allowed to exist.  *Mine is the only type to have a seventy year life span.*

None of the information in it is considered sensitive to The Department of Defense or The Department of the Navy in any way.  And as far as the Federal Government is concerned all information in either my closed FBI File or my sealed military field service jacket is for my eyes only.  So please don't allow the nature of how the information is retained to cloud the issue.

Sincerely:

*Mr. Silvester McKanney*

**Mr. Silvester  McKanney**

| **VA** Veterans Administration | **VHA FAX TRANSMITTAL** |
|---|---|

This transmission is intended only for the use of the person or office to whom it is addressed and may contain information that is privileged, confidential, or protected by law.

All others are hereby notified that receipt of this message does not waive any applicable privilege or exemption from disclosure and that any dissemination, distribution, or copying of this communication is prohibited.

If you have received this communication in error, please notify us immediately at the telephone number shown below. Thank you.



**JAMES J. PETERS VA MEDICAL CENTER**
**BRONX, NEW YORK 10468**

| TO | FAX NUMBER | FTS | COMMERCIAL | DATE | NO. PAGES ATTACHED |
|---|---|---|---|---|---|
| Mr. Louis Pelagrino | (212) 637-2686 | | | 5/2/13  4/29/13 | 4 |

SUBJECT

Judge request me to send you a letter

| FROM | TELEPHONE NUMBER | FTS | COMMERCIAL |
|---|---|---|---|
| Mr. Silvester McKanney | (347) 963-4319 | | |

Automated VA Form 10-0114R

Mr. Silvester  McKanney
Unit: VA – 97 NAS Lemoore, CA
SSI # ████████████
Date of Birth: ████/59
Birthplace:████████████████████
U.S. Navy date of service; From 8/78 to 7/81
Unit and Ship:  Squadron VA – 97
Attached to the USS Coral Sea  ( CV 43 )
Address:  2266 – Andrews Ave. Apt. 1-d
Bronx, NY 10468
Date:  May 2, 2013
Phone: # (████████████
Cell: # (████████████

Sir:

    I, Silvester McKanney, declare under the penalty of perjury under the laws of the United States of America that all of the foregoing statements are true and correct, and that I am the person named here in.  And I understand that any falsification of this statement is punishable by law. <u>I am asking the Department of Defense via the Department of the Navy to retrieve and declassify my closed or sealed military field service jacket and send its' contents to me by means of Fed Ex one day registered mail or the most secure fastest method you have available.  If just only a redacted copy can be released unto me, I implore you to without doubt please include all information of my personal papers { namely: (1). the copy of my trust agreement, (2). the federal savings bond or any other monetary items, (3).personal household papers, (4).all medical examination reports as well as their determinations, and (5).the entire set of my already approved 100% disability claim paperwork }.</u>  I will gladly pay for the shipping fees.

    I thought that a copy of my identification cards would help in the process of assuring the government of my identity and the authenticity of the request of my sealed or closed military field service jacket.  I am formally requesting that my file be released unto me without delay, and if at all possible another copy of my already approved 100% disability claim paperwork to be sent to the VA Regional Office for NY, NY.  I am enclosing a copy of New York State IDs, old Alabama State ID, Veteran ID Card, DAV ID card, and Passport.  Please press this issue through with a greater since of urgency, because everything is hinging on this matter being resolved immediately.  My financial situation right now is in a desperate state; ergo the only viable solution at this time is to rectify this inadvertent oversight of those responsible for the storage and the availability of my file.  Please help me retrieve my file without any more delays.  In closing I would like say thank you in advance, and that I do appreciate your efforts in trying things straighten out.


Sincerely:


Mr. Silvester  McKanney





The Secretary of State of the United States of America
hereby requests all whom it may concern to permit the citizen/national
of the United States named herein to pass without delay or hindrance
and in case of need to give all lawful aid and protection.

Le Secrétaire d'État des États-Unis d'Amérique
prie par les présentes toutes autorités compétentes de laisser passer le citoyen
ou ressortissant des États-Unis titulaire du présent passeport, sans délai ni
difficulté et, en cas de besoin, de lui accorder toute aide et protection légitimes.

El Secretario de Estado de los Estados Unidos de América por el presente solicita a las
autoridades competentes permitir el paso del ciudadano o nacional de los Estados Unidos
aquí nombrado, sin demora ni dificultades, y en caso de necesidad, prestarle toda la
ayuda y protección lícitas.

SIGNATURE OF BEARER

**NOT VALID UNTIL SIGNED**

PASSPORT
PASS-PORT
PASS-PORTE
**USA**

Type/Type/Tipo    Code/Code/Código    USA
P                                      USA

Surname/Nom/Apellidos
MCKANNEY
Given names/Prénoms/Nombres
SILVESTER
Nationality/Nationalité/Nacionalidad
UNITED STATES OF AMERICA
Date of birth/Date de naissance/Fecha de nacimiento

Sex/Sexe/Sexo    Place of birth/Lieu de naissance/Lugar de nacimiento
M               ALABAMA, U.S.A.

SILVESTER

DATE PRINTED: 08/18/2011 03:36:50 PM

**NEW YORK STATE**
**BENEFIT**
**IDENTIFICATION CARD**

LAST NAME    MCKANNEY
FIRST NAME / M.I.    SILVESTER